UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOLLY GREY,<br><br>                    Plaintiff,<br><br>          v.<br><br>FORESCOUT TECHNOLOGIES, INC.,<br><br>                    Defendant. | Case No.   5:21-cv-04555-EJD<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. Nos. 17, 18, 23 |

On April 23, 2021, Plaintiff Holly Grey filed suit in the Superior Court of the State of California, County of Santa Clara, alleging breach of contract and violations of California Labor Code.  *See* Complaint ("Compl."), Dkt No. 1, Ex. A.  Defendant Forescout Technologies, Inc. ("Forescout") removed the action from state court to federal court.  *See* Dkt. No. 1.  Plaintiff seeks to remand the action back to the Santa Clara County Superior Court.  *See* Plaintiff's Memorandum of Law in Support of Motion to Remand ("Mot. to Remand"), Dkt. No. 18.  On July 13, 2021, Defendant filed an opposition to Plaintiff's motion to remand, to which Plaintiff filed a reply.  *See* Opposition to Plaintiff's Motion to Remand ("Opp. re Remand"), Dkt. No. 21; Reply Brief in Support of Plaintiff's Motion to Remand ("Reply re Remand"), Dkt. No. 22.  For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand.[1]

**I.      BACKGROUND**

Plaintiff joined Forescout in November 2013 as its Vice President of Finance, after which she was promoted to Senior Vice President of Finance.  Compl. ¶ 5.  During 2017, Forescout

---

[1] On November 22, 2021, the Court found this motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b).  *See* Dkt. No. 27.

*United States District Court*
*Northern District of California*

began working toward an initial public offering and it was anticipated that another entity would acquire a controlling interest in Forescout.  Compl. ¶ 7.  To give its management employees job security and encourage them to remain with the company in the event of such an acquisition, Forescout offered members of its management group certain change of control severance benefits that would trigger under certain circumstances.  Compl. ¶ 7.  On or about June 23, 2017, Forescout offered Plaintiff an amendment to her Employment Offer that provided for such change of control severance benefits (the "Change of Control Amendment").  Compl. ¶ 7.  Plaintiff accepted this amendment.

Under the Change of Control Amendment if a change in ownership of Forescout occurred, Plaintiff would be entitled to severance compensation and acceleration of her unvested awards if she was terminated without "cause" or if she terminated her own employment for "Good Reason." Compl. ¶ 8.  Specifically, the Change of Control Amendment provided:

> In addition, during the Change of Control Period, you will receive (1) a cash severance payment equal to 100% of your then-current base salary plus 100% of your target annual incentive compensation and (2) a lump sum cash amount equal to the product of 12 months, multiplied by the monthly premium pursuant to COBRA, that you would be required to pay to continue the group health coverage in effect on the date of your termination for [ ] you and any of your eligible dependents (which amount will be based on the premium for the first month of COBRA coverage) if (a) the Company is subject to a Change of Control of the Company before your service with the Company terminates and (b) you are subject to a termination without cause or terminate your own employment for Good Reason;

> In addition, during the Change of Control Period, 100% of the unvested portion of all of your equity awards shall immediately accelerate and become fully exercisable or non-forfeitable as of the date of your termination if (a) the Company is subject to a Change of Control before your service with the Company terminates and (b) you are subject to a termination without cause or terminate your own employment for Good Reason. For purposes of the foregoing, to the extent that any equity award was eligible to vest in full or in part based on performance, the performance component shall be deemed to have been achieved at target and; in addition, if any equity award will not continue through assumption or substitution after the Change of Control, such award will be fully vested immediately prior to the Change of Control.

*See* Compl., Ex. 2.

Case No.: 5:21-cv-04555-EJD
ORDER GRANTING MOTION TO REMAND

United States District Court
Northern District of California

1        Among the definitions set forth in the Change of Control Amendment, "Good Reason" was

2   specifically defined as:

3            Good Reason.  For the purpose of this offer of employment, "Good
             Reason" shall mean the occurrence of any of the following events,
4            without your written consent:

5            (a) a material reduction of your base salary;

6            (b) a material reduction of your target cash incentive opportunity as
             set forth herein or as increased during the course of your employment
7            with the Company;

8            (c) a material reduction in your duties, authority, reporting
             relationship or responsibilities;
9
             (d) a requirement that you relocate to a location more than fifty (50)
10           miles from your then-current office location;

11           (e) a material violation by the Company of a material term of any
             employment, severance or change of control agreement between you
12           and the Company; or

13           (f) a failure by any successor entity to the Company to assume the
             terms of this offer of employment.
14
             A termination by you for Good Reason will not be deemed to have
15           occurred unless you give the Company written notice of the condition
             within ninety (90) days after the condition comes into existence, the
16           Company fails to remedy the condition within thirty (30) days after
             receiving the written notice (the "Cure Period"), and you terminate
17           your employment with the Company within ninety (90) days
             following the expiration of the Cure Period.
18
    *See* Compl., Ex. 2.
19
20       The Parties agree that a "Change of Control" event occurred when Forescout was acquired

21   by Advent International ("Advent") on or about August 17, 2020.  Compl. ¶ 10.  Prior to the

22   acquisition by Advent, Forescout was a publicly traded corporation, listed on the Nasdaq stock

23   exchange.  Compl. ¶ 11.  After the acquisition, Forescout was de-listed and became a privately

24   held corporation.  Compl. ¶ 11.  Plaintiff alleges that the change in ownership resulted in a

25   "material reduction in duties" and thus constituted "Good Reason" for Plaintiff to terminate her

26   own employment and trigger the severance and benefits under the Change of Control Amendment.

27   Compl. ¶ 11 (alleging that Plaintiff experienced a decrease in responsibilities following the change

28   Case No.: 5:21-cv-04555-EJD
     ORDER GRANTING MOTION TO REMAND
                                        3

1    of control).  Plaintiff provided Forescout with written notice of the conditions of employment that,

2    in her mind, constituted a change in employment within the 30-day notice period.  Compl. ¶ 12.

3    However, Forescout disagreed with Plaintiff that there were circumstances giving rise to a change

4    in conditions.  Compl. ¶ 15.  Subsequently, Plaintiff submitted her resignation on or about October

5    14, 2020, and terminated her employment.  Compl. ¶ 18.  Thereafter, Forescout refused to pay

6    Plaintiff the cash severance payment provided by the Change of Control Amendment and refused

7    to accelerate the vesting of Plaintiff's equity awards.  Compl. ¶ 19.

8        On April 2023, 2021, Plaintiff sued Forescout in Santa Clara County Superior Court to

9    recover severance benefits owed to her under the Change of Control Amendment.  Plaintiff asserts

10    six causes of action, all based on the Change of Control Amendment: (1) violation of Cal. Labor

11    Code §§ 201–203 for "wages wrongfully withheld," Compl. ¶¶ 20–25; (2) violation of Cal. Labor

12    Code § 221 for "unlawful wage forfeiture," Compl. ¶¶ 26–31; (3) breach of contract, Compl.

13    ¶¶ 32–37; (4) breach of the covenant of good faith and fair dealing, Compl. ¶¶ 38–42; and (5)

14    conversion, Compl. ¶¶ 43–46.  Plaintiff also seeks a declaratory judgment that, among other

15    things, her resignation was for "Good Reason."  Compl. ¶¶ 47–50.

16        On June 14, 2021, Forescout removed this action to this Court based on federal question

17    jurisdiction.  Forescout argues the severance plan, which benefits not only Plaintiff but also other

18    upper-level managers, requires an ongoing administrative scheme to administer and is thus

19    governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  Forescout argues

20    that ERISA completely preempts Plaintiff's state-law causes of action.

21        **II.        LEGAL STANDARD**

22        28 U.S.C. § 1447(c) provides,"If at any time before final judgment it appears that the

23    district court lacks subject matter jurisdiction, the case shall be remanded."  The party seeking

24    removal bears the burden of establishing jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th

25    Cir. 1992).  The Court strictly construes the removal statute against removal jurisdiction.  *Id.*

26    Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first

27    instance.  *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  Indeed,

28    Case No.: 5:21-cv-04555-EJD
     ORDER GRANTING MOTION TO REMAND

*United States District Court*
*Northern District of California*

1  federal courts are "particularly skeptical of cases removed from state court." *Warner v. Select*

2  *Portfolio Servicing*, 193 F. Supp. 3d 1132, 1134 (C.D. Cal. 2016) (citing *Gaus*, 980 F.2d at 566).

3  "If at any time before final judgment it appears that the district court lacks subject matter

4  jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

5  **III.    DISCUSSION**

6        ERISA preemption allows lawsuits involving employee benefit plans to be removed to

7  federal court. *See* 29 U.S.C. § 1144(a). Because ERISA preemption is the sole basis of federal

8  jurisdiction, this Court must decide whether the "Change of Control" Amendment is an "employee

9  benefit plan" within the meaning of 29 U.S.C. § 1003(a). If ERISA applies, the Court will have

10 subject-matter jurisdiction and remand must be denied. However, if ERISA does not apply, the

11 Court must remand this action for lack of subject-matter jurisdiction. The question the Court must

12 answer is whether the plan in question "'require[s] an administrative scheme' because 'the

13 circumstances of each employee's termination [have to be] analyzed in light of [certain] criteria.'"

14 *Bogue*, 976 F.2d at 1323 (quoting *Fontenot v. NL Indus., Inc.*, 953 F.2d 960, 962–63 (5th Cir.

15 1992)).

16       ERISA preemption is "notoriously broad," but it is not unlimited. Several recent cases

17 have held that it has "reasonable limits." *See Bogue v. Ampex Corp.*, 976 F.2d 1319, 1322 (9th

18 Cir. 1992). For example, in *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987), the

19 Supreme Court held that ERISA did not preempt a state plant-closure law that provided for a lump

20 sum severance payment, triggered by a single event that may never occur. Such a law "simply

21 creates no need for an ongoing administrative program for processing claims and paying benefits."

22 *Fort Halifax*, 428 U.S. at 12. Plaintiff contends that the Change of Control Amendment should be

23 similarly exempt from ERISA preemption. She points out that the Amendment had a very short

24 term (15 months); it applied only contingently, *if* a change of control occurred, *and if* the

25 employee were terminated without cause or self-terminated for Good Reason; and it applies to a

26 small group of employees. Forescout contends that the program requires the sort of discretionary

27 decision-making by an administrator that is the hallmark of an ERISA plan. The Court disagrees.

28 Case No.: 5:21-cv-04555-EJD
   ORDER GRANTING MOTION TO REMAND
                                         5

United States District Court
Northern District of California

1    The Change of Control Amendment, like the statute at issue in *Fort Halifax*, neither

2    establishes, nor requires an employer to maintain, an employee benefit plan.  The Amendment

3    does not require Forescout to "assume[] . . . responsibility to pay benefits on a regular basis" and

4    thus it creates "no periodic demands on [Forescout's] assets that create a need for financial

5    coordination and control."  *Id.*  Rather, Forescout's obligation is predicated on the occurrence of a

6    single contingency (termination) that could have never materialized.  Like *Fort Halifax*, once the

7    benefit arises, satisfaction of the benefit requires "only making a single set of payments."  *Id.*  "To

8    do little more than write a check hardly constitutes the operation of a benefit plan."  *Id.*  Indeed,

9    once the single payment is over, Forescout has no further responsibility and so the possibility of a

10   one-time obligation "creates no need for an ongoing administrative program for processing claims

11   and paying benefits."  *Id.*

12       This point is underscored by comparing the consequences of the Change of Control

13   Amendment with *Bogue*.  *Bogue* involved a program whereby an employer would provide certain

14   executives severance benefits in the event the employees were not offered "substantially

15   equivalent employment" once the employer was sold to another company.  976 F.2d at 1321.  The

16   program designated the buying company as the entity that would determine whether the

17   employment offered to any given executive was substantially equivalent to the position the

18   executive previously held.  *Id.*  Even though the plan was triggered by a single event, that event

19   would occur more than once, at different times for each employee, and required the program

20   administrator to make a "case-by-case discretionary application of" the program's terms.  *Id.* at

21   1323.  Thus, because there was no way to administer the program without an administrative

22   scheme, an ERISA plan existed.  *Id.*

23       The Ninth Circuit later clarified *Bogue*'s requirement of discretion in a case where

24   severance benefits depended on whether the employee was terminated "for cause":

25           Here, as in *Delaye* [*v. Agripac, Inc.*, 39 F.3d 235 (9th Cir.1994)], the
             employer was simply required to make a single arithmetical
26           calculation to determine the amount of the severance benefits.  While
             in both cases, a "for cause" termination would change the benefits due
27           to the employee, the *Delaye* court did not deem this minimal quantum

United States District Court
Northern District of California

1

2

3

4

5

> of discretion sufficient to turn a severance agreement into an ERISA plan.  Contrary to PACE's assertions, the key to our holding in *Bogue* was that there was "*enough* ongoing, particularized, administrative discretionary analysis," 976 F.2d at 1323 (emphasis added), to make the plan an "ongoing administrative scheme," not that the agreement simply required some modicum of discretion.  The level of discretion, if any, which PACE was required to exercise in implementing the agreement was slight.  It failed to rise to the level of ongoing particularized discretion required to transform a simple severance agreement into an ERISA employee benefits plan.

6    *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1316 (9th Cir. 1997).[2]

7            Against this backdrop, the Court must conclude that the Change of Control Amendment

8    does not constitute an ERISA plan, but rather is an employment contract arrangement governed by

9    state law.  First, under the terms of the plan, and in contrast to the plan at issue in *Bogue*, the

10   Change of Control Amendment does not assign an administrator the task of determining whether

11   "Good Reason" exists.  Instead, it seems to place the burden on the employee to determine

12   whether "Good Reason" for termination exists.  *See* Compl., Ex. 2 (allowing the employee to

13   terminate employment if *employer does not* cure the identified problem).  Second, the amount and

14   duration of payments are fixed, and the amount does not depend on a discretionary decision.

15   Likewise, the deferred compensation agreements do not reference administrative procedures that

16   must be followed.  Third, because the Change of Control Amendment defines what constitutes

17   "Good Reason," the determination is more like the "for cause" term in the *Velarde* employment

18   contract than the "substantially equivalent employment" term in the *Bogue* ERISA plan.  The level

19   of discretion, if any, which Forescout was required to exercise in implementing the agreement was

20   slight and fails to rise to the level of ongoing, particularized discretion required to transform a

21   severance agreement into an ERISA employee benefits program.  Finally, even if the triggering

22   events here are like the ones at issue in *Bogue* in that they "would occur more than once, at a

23   different time for each employee," 976 F.2d at 1323, and different from the one in *Fort Halifax* in

24   _____

25   [2] The Court is troubled that *Velarde* was not discussed in Forescout's brief during its discussion of
*Bogue*.  *Velarde* analyzes a severance agreement that included mandatory benefits unless an
26   employee was terminated for cause.  This is a case that analyzes *Bogue*'s limitations and offers
analysis as to why the Change of Control Amendment is not an ERISA plan.  The Court reminds
27   counsel of its duty to disclose to the tribunal legal authority known to counsel to be directly
adverse to the position of its client.  Cal. Rule of Prof'l Conduct 3-3.

28   Case No.:  5:21-cv-04555-EJD

United States District Court
Northern District of California

that the triggering event may never occur, 482 U.S. at 12, the events do not require significant, particularized, and ongoing discretion as the events can be easily ascertained.

As in *Velarde*, the Change of Control Amendment is not a "plan" for purposes of ERISA preemption because it necessitates no "ongoing administrative scheme." To qualify for severance, Plaintiff only needed to provide "Good Reason" as defined by the Amendment. Because the Change of Control Amendment is not a "plan" for purposes of ERISA, this Court lacks subject-matter jurisdiction and must remand the action pursuant to 28 U.S.C. § 1447(c).

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand. The Clerk is **DIRECTED** to **REMAND** this case to the Santa Clara County Superior Court and close the file.[3]

**IT IS SO ORDERED.**

Dated: March 16, 2022

EDWARD J. DAVILA
United States District Judge

---

[3] Because the Court **GRANTS** Plaintiff's motion to remand, it **TERMINATES** Forescout's motion to dismiss, Dkt. No. 18. Additionally, because the Court did not rely on the portion of Plaintiff's reply that Forescout objects to in its administrative motion for court approval to file a sur-reply, the Court **DENIES** Forescout's motion to file a sur-reply, Dkt. No. 23.

Case No.: 5:21-cv-04555-EJD
ORDER GRANTING MOTION TO REMAND
8